UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| AMICA MUTUAL INSURANCE COMPANY, | : | CA 06 411 ML |
| Plaintiff, | : | |
| v. | : | C.A. No: |
| | : | **JURY TRIAL DEMANDED** |
| MOSTCHOICE.COM, INC. | : | |
| Defendant. | : | |

## COMPLAINT

Plaintiff, Amica Mutual Insurance Company ("Amica"), brings this action against Defendant, Mostchoice.com, Inc. ("Mostchoice"), for trademark infringement, false designation of origin and unfair competition in violation of federal and state statutory and common law and alleges as follows:

## PARTIES

1. Amica is a Rhode Island corporation with a principal place of business located at 100 Amica Way, Lincoln, Rhode Island 02865. Amica sells direct a variety of insurance products, including automobile, life, marine, personal umbrella liability and home policies.

2. Upon information and belief, Mostchoice is a Georgia corporation with its principal place of business located at 5600 Roswell Road, Suite 275 N, Atlanta, Georgia 30342.

## JURISDICTION AND VENUE

3. Amica brings this action for federal trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114; unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and unfair competition in violation of Rhode Island common law.

4. This Court has original jurisdiction under 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338(a) and 1338(b). This Court has supplemental jurisdiction over all other claims asserted herein under 28 U.S.C. § 1367(a).

5. This Court has jurisdiction over Mostchoice and venue is properly laid in this Court under 28 U.S.C. §1391 (b) and (c) inasmuch as Mostchoice operates an Internet website that is directed to insurance customers in this judicial district and is readily accessible to Internet users in this judicial district.

## FACTS

### A. Amica, Its Products and Trademarks

6. For nearly one hundred (100) years, Amica has insured drivers of automobiles, and is the oldest mutual insurer of automobiles in the nation.

7. As a leading provider of insurance products, Amica has written hundreds of thousands of auto, home, life and personal umbrella insurance policies since its founding.

8. Amica currently services over 1.1 million insurance policies for customers throughout the United States.

9. Amica distinguishes its insurance products and services from those of other companies by providing competitively priced products and services, while offering industry-leading customer service. In fact, Amica's customer service has been ranked "Highest in Customer Satisfaction Among National Homeowners Insurers" by J.D. Power and Associates for the past four years in a row in its National Homeowners Insurance Studies.

10. To further enhance its industry-leading customer service, Amica provides numerous services to its customers through its Internet website located at www.amica.com.

Through this website, customers may obtain instant quotations for automobile, homeowners, condominium, renters, and term life insurance.

11. Amica first began using the word mark AMICA® in commerce in or about February of 1911 in connection with the marketing and sale of insurance services and products and has been using it in commerce continuously since then.

12. Amica owns a number of federal trademark registrations for a family of AMICA® marks (the "AMICA® Marks") in connection with advertising and sales of insurance products and charitable activities, including:

THE AMICA COMPANIES®;
AMICA COMPANIES FOUNDATION®;
AMICA FOUNDATION®; and
AMICA AUTO HOME LIFE®.

13. During its long, widespread and continuous use of the AMICA® Marks, Amica has expended millions of dollars to advertise and promote the AMICA® Marks and their associated products and services. Amica has prominently featured the AMICA® Marks throughout the United States in brochures, the *Amica Today* magazine, industry publications, press releases, charitable events and sponsorships, national advertising campaigns in a variety of media and on its website.

14. Through its promotion, advertising and quality of products and services, Amica has developed considerable goodwill in its AMICA® brand, which is widely recognized by consumers as insurance.

15. To protect the substantial goodwill associated with its insurance products, Amica has applied for, and received, several registrations from the United States Patent and Trademark Office (the "PTO") for its AMICA® trademark (Reg. No. 0354683, granted February 22, 1938, reflecting first-use in commerce in February, 1911; Reg. No. 0666397, granted August 26, 1958,

reflecting first-use in commerce in 1911; Reg. No. 1911774, granted August 15, 1995, reflecting first-use in commerce in September, 1969; and Reg. No. 2276586, granted September 7, 1999, reflecting first-use in commerce on January 2, 1998). A copy of the United States Patent and Trademark Office website reports of the registrations are attached as Exhibit A. Amica's AMICA® trademark registrations are valid and subsisting, and incontestable as a matter of law.

16. As a result of the long history of Amica's use of the mark AMICA® and Amica's sales, service, advertising and promotion, the AMICA® Marks are inherently distinctive, have established strong secondary meaning, have achieved fame and embody substantial goodwill.

17. The AMICA® Marks identify Amica as the sole source of goods and services designated with the AMICA® Marks and have become widely known amongst consumers and in the insurance industry as identifying high quality insurance products and services originating from Plaintiff. Accordingly, the AMICA® Marks are extremely valuable commercial assets.

**B. Mostchoice's Business**

18. Upon information and belief, Mostchoice solicits personal information from prospective insurance customers through its Internet website, www.mostchoice.com (the "Website"), under the guise of providing free insurance quotes for Amica products. The Website further purports to provide unbiased information and access to independent local insurance agents. Amica, however, sells its insurance products and services through its direct sales force. It does not sell its products or services using independent insurance agents or representatives.

19. In or about November of 2005, Amica became aware that Mostchoice was engaging in the unauthorized use of Amica's federally registered AMICA® trademark through advertisements on the Google search engine.

20. By letter dated November 17, 2005, Amica demanded that Mostchoice immediately cease and desist its unauthorized use of the AMICA® trademark

21. Mostchoice partially complied with Amica's demand insofar as it apparently ceased utilizing the AMICA® trademark in advertisements on the Google search engine.

22. In or about April of 2006, however, Amica learned that Mostchoice continued to engage in the unauthorized use of Amica's federally registered AMICA® trademark by referencing "Amica Mutual Insurance Co." in connection with offering insurance quotes on the Website. An example of Mostchoice's use of the AMICA® mark is attached as Exhibit B.

23. The Website contains a link stating "GET FREE QUOTES NOW" with references to "Amica Mutual Insurance Co." both above and below the link.

24. A prospective insurance customer who clicks on the "GET FREE QUOTES NOW" link will be asked to enter personal information, including, without limitation, his or her date of birth and social security number.

25. Upon information and belief, an individual who enters such personal information will not immediately receive an insurance quote.

26. Any quote that may be provided as a result of the submission of personal information by an individual through the "GET FREE QUOTES NOW" link is not provided, sponsored, or approved by Amica.

27. On April 13, 2006, Amica sent a letter to Mostchoice demanding that Mostchoice immediately cease and desist its unauthorized use of the AMICA® mark. Mostchoice has not responded to Amica's demands and continues its unauthorized use of the AMICA® mark.

28. Mostchoice's use of "Amica Mutual Insurance Co." in connection with purporting to offer insurance quotes on the Website is calculated to deceive consumers into believing that Amica's insurance products are provided by or associated with Mostchoice.

29. Mostchoice's use of "Amica Mutual Insurance Co." on the Website is likely to cause confusion with consumers and customers within the insurance industry.

30. Further, upon information and belief, Mostchoice is using "Amica Mutual Insurance Co." for the express purpose of trading on Amica's well-known and respected AMICA® Marks and to deceive consumers by obtaining personal information by artifice.

**COUNT I**

**Federal Trademark Infringement**

**(Violation of 15 U.S.C. § 1114)**

31. Plaintiff hereby realleges and incorporates by reference the allegations of paragraphs 1 through 30 of this Complaint as if fully set forth herein.

32. Mostchoice, without the consent of Amica, has used in commerce marks confusingly similar and/or identical to Amica's registered trademarks in connection with the sale and offering for sale of insurance products, which use is likely to cause confusion, or to cause mistake or to deceive.

33. Mostchoice's acts constitute trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114.

34. Mostchoice's acts are intentional, willful and in bad faith.

35. The aforesaid acts of Mostchoice have caused, and are causing, great and irreparable harm and damage to Amica, and unless permanently restrained by this Court, said irreparable injury will continue.

36. Amica has no adequate remedy at law.

**COUNT II**

**Federal Unfair Competition and False Designation of Origin**

**(Violation of 15 U.S.C. § 1125(a))**

37. Plaintiff hereby realleges and incorporates by reference the allegations of paragraphs 1 through 36 of this Complaint as if fully set forth herein.

38. The aforesaid acts of Mostchoice constitute the intentional use of words, terms, names, symbols and devices and combinations thereof; false designations of origin; and false and misleading representations of fact that are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of Mostchoice with Amica, or as to the origin, sponsorship or approval of Mostchoice's products or other commercial activities by Mostchoice.

39. The aforesaid acts of Mostchoice constitute the use of words, terms, names, symbols and devices and combinations thereof; false designations of origin; and false and misleading representations of fact that in commercial advertising or promotion, misrepresent the nature, characteristics or qualities of Mostchoice's products or other commercial activities.

40. The aforesaid acts of Mostchoice constitute false designation of origin, false and misleading descriptions and representations and false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

41. The aforesaid acts of Mostchoice have caused, and are causing, great and irreparable harm and damage to Amica, and unless permanently restrained by this Court, said irreparable injury will continue.

42. Amica has no adequate remedy at law.

**COUNT III**

**(Common Law Unfair Competition)**

43. Plaintiff hereby realleges and incorporates by reference the allegations of paragraphs 1 through 42 of this Complaint as if fully set forth herein.

44. Mostchoice's aforesaid acts are a violation and derogation of Amica's common law rights and are likely to cause confusion, mistake and deception among consumers and the public as to the source, origin, sponsorship, or quality of Mostchoice's products, and to the extent that Mostchoice does not sell products, Mostchoice's aforesaid acts are likely to cause confusion, mistake and deception among consumers and the public as to Mostchoice's affiliation with or sponsorship by Amica of Mostchoice's aforesaid acts.

45. Mostchoice's aforesaid acts are causing loss, damage and injury to Amica and to the purchasing public.

46. Mostchoice knows, or in the exercise of reasonable care should know, that its conduct is likely to so mislead the public.

47. The foregoing conduct by Mostchoice has been knowing, deliberate, willful, intended to cause mistake or to deceive, and in disregard of Amica's rights.

48. Mostchoice's wrongful acts, as alleged above, have permitted or will permit it to make substantial sales and profits and deceive consumers by obtaining personal information by artifice on the strength of Amica's nationwide and international marketing, advertising, sales and consumer recognition.

49. As a direct and proximate result of Mostchoice's wrongful conduct, as alleged above, Amica has been and will be deprived of substantial sales of products and services in an amount as yet unknown but to be proved at trial, and has been and will be deprived of the value of its AMICA® brand in an amount as yet unknown but to be determined at trial.

50. The aforesaid acts of Mostchoice constitute unfair competition in violation of common law.

51. The aforesaid acts of Mostchoice have caused and are causing great and irreparable harm and damage to Amica, and unless permanently restrained by this Court, said irreparable injury will continue.

52. Amica has no adequate remedy at law.

**RELIEF REQUESTED**

WHEREFORE, plaintiff Amica prays for a judgment in its favor and against defendant Mostchoice ordering:

A. That Mostchoice, and each of its officers, directors, agents, servants, employees and representatives, and those persons in active concert or participation with them or any of them, be temporarily, preliminarily and permanently enjoined and restrained from:

(1) using on or in connection with the advertising, promotion, offering for sale, sales or distribution of insurance products or services, the designation "Amica Mutual Insurance Company" or any variations thereof or anything confusingly similar thereto or to any of Plaintiff's trademarks, including, but not limited to, any of the AMICA® Marks, or any variations thereof or anything confusingly similar thereto;

(2) representing by any means whatsoever, directly or indirectly, or doing any other acts or things calculated or likely to cause confusion, mistake or to deceive consumers into believing that Mostchoice's products and services are those of Amica, or that there is any affiliation or connection between Amica or its products and services and Mostchoice or its products and services, and from otherwise unfairly competing with Plaintiff;

(3) causing to be advertised, published or disseminated by any means any false or misleading representations as to the existence of any relationship between Mostchoice and Amica or between any products and services of Mostchoice and any products and services of Amica.

B. That Amica recover its damages sustained as a result of Mostchoice's infringement, unfair competition and false designation of origin under federal, state and common law, together with an accounting of Mostchoice's profits arising from such activities, and that the Court exercise its discretion and enter a judgment for such additional sums as the Court shall find to be just, according to the egregious, willful and intentional nature of the acts of Mostchoice;

C. That Amica has and recovers treble damages under 15 U.S.C. § 1117;

D. That plaintiff has and recovers its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117;

E. That Mostchoice be required to recall from any and all channels of trade, any and all advertising or promotional materials using the designation "Amica Mutual Insurance Company" or any variations thereof or anything confusingly similar thereto or to any of the AMICA® Marks, and to take affirmative steps to dispel any false suggestion of a connection to Amica by virtue of its activities, including, but not limited to, all necessary and appropriate corrective advertising measures;

F. That Amica has and recovers its costs and disbursements herein; and

G. That Amica has such other and further relief as the Court may deem just and proper.

Respectfully submitted,

AMICA MUTUAL INSURANCE COMPANY
By its attorneys,

Craig M. Scott, Esq. (#4237)
DUFFY SWEENEY & SCOTT, LTD
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700
(401) 455-0701-Fax

Dated: September 15, 2006

*Amica\Mostchoice\Pleadings\Complaint.doc*